## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF CONNECTICUT

|  |  |
|---|---|
| DR. JEFFREY MILTON, DDS, INC., individually and on behalf of all others similarly situated, | Civil Action No. _____ |
| Plaintiff, | **JURY TRIAL DEMANDED** |
| v. |  |
| HARTFORD CASUALTY INSURANCE COMPANY, |  |
| Defendant. |  |

## CLASS ACTION COMPLAINT

Plaintiff Dr. Jeffrey Milton, DDS, Inc., dba Olentangy Pediatric Dentistry ("Olentangy Pediatric"), individually and on behalf of the other members of the below-defined nationwide classes (collectively, the "Class"), brings this class action against Defendant Hartford Casualty Insurance Company ("Hartford Casualty"), and in support thereof states the following:

## I.    NATURE OF THE ACTION

1.    Plaintiff Olentangy Pediatric owns and operates Olentangy Pediatric Dentistry, located in Powell, Ohio. Olentangy Pediatric Dentistry provides specialized dental care for infants, children, and adolescents. Olentangy Pediatric's business, however, is now threatened by SARS-CoV-2, sometimes called "Coronavirus" or by one of the names of the disease that it causes and that spreads it. For ease of reference, SARS-CoV-2 will be referred to as "COVID-19" herein.

2.    To protect its businesses in the event that they suddenly had to suspend operations for reasons outside of its control, Plaintiff purchased insurance coverage from Hartford Casualty,

including property coverage, as set forth in Hartford Casualty's Special Property Coverage Form (Form SS 00 07 07 05) ("Special Property Coverage Form").

3.      Hartford Casualty's Special Property Coverage Form provides various "Time Element Coverages," including "Business Income" coverage, "Civil Authority" coverage, and "Extra Expense" coverage.

4.      The Special Property Coverage Form's "Business Income" coverage promises to pay for loss due to the necessary suspension of operations following physical loss of or damage to the insured premises.

5.      The Special Property Coverage Form's "Civil Authority" coverage promises to pay for loss caused by the action of a civil authority that prohibits access to the insured premises because of damage to property in the immediate area of the insured premises.

6.      The Special Property Coverage Form's "Extra Expense" coverage promises to pay the expense incurred to minimize the suspension of business and to continue operations.

7.      Plaintiff's Hartford Casualty's insurance policy also includes Hartford Casualty's "Limited Fungi, Bacteria or Virus Coverage" endorsement (the "Virus Coverage Endorsement"), which applies to the Specialty Property Coverage Form.

8.      The Virus Coverage Endorsement provides limited coverage for losses caused by virus.

9.      The Virus Coverage Endorsement states, with respect to the Specialty Property Coverage Form's Time Element Coverages, that if a suspension of operations is "necessary due to loss or damage to property caused by . . . virus," then Hartford Casualty's payment under the Time

Element Coverage is limited to the amount of loss and expense sustained during a period of thirty days or the number of days indicated in the policy's declarations.

10.    Plaintiff was forced to suspend or reduce business at Olentangy Pediatric Dentistry due to COVID-19 and the resultant closure orders issued by civil authorities in Ohio.

11.    Hartford Casualty denied Plaintiff's claim for loss under his Hartford Casualty policy.

12.    Indeed, upon information and belief, Hartford Casualty has, on a widescale and uniform basis, refused to pay its insureds under its Business Income, Civil Authority, and Extra Expense coverages for losses suffered due to COVID-19, any orders by civil authorities that have required the necessary suspension of business, and any efforts to prevent further property damage or to minimize the suspension of business and continue operations.

## II.    JURISDICTION AND VENUE

13.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332, because Defendant and Plaintiffs are citizens of different states, and because: (a) the Class consists of at least 100 members; (b) the amount in controversy exceeds $5,000,000 exclusive of interest and costs; and (c) no relevant exceptions apply to this claim.

14.    Venue is proper in this District under 28 U.S.C. § 1391, because Defendant resides in this District.

## III.    THE PARTIES

*Plaintiff*

15.    Plaintiff Olentangy Pediatric is a Delaware corporation, with its principal place of business in Powell, Ohio.

*Defendant*

16.    Defendant Hartford Casualty is an insurance company organized under the laws of Connecticut, with its principal place of business in Hartford, Connecticut.

### IV.    <u>FACTUAL BACKGROUND</u>

*A.    The Special Property Coverage Form*

17.    In return for the payment of a premium, Hartford Casualty issued Policy No. 40 SBA PI2050 to Plaintiff Olentangy for a policy period of July 28, 2019 to July 28, 2020, including a Specialty Property Coverage Form.  Policy No. 40 SBA PI2050 is attached hereto as Exhibit A. Plaintiff Olentangy has performed all of its obligations under Policy No. 40 SBA PI2050, including the payment of premiums.  The Covered Property, with respect to the Special Property Coverage Form, is Olentangy Pediatric Dentistry, located at 45 Clairedan Drive, Powell, Ohio.

18.    In many parts of the world, property insurance is sold on a specific peril basis.  Such policies cover a risk of loss if that risk of loss is specifically listed (e.g., hurricane, earthquake, H1N1, etc.).  Most property policies sold in the United States, however, including those sold by Hartford, are all-risk property damage policies.  These types of policies cover all risks of loss except for risks that are expressly and specifically excluded.  With respect to the Special Property Coverage Form provided to Plaintiff, Hartford Casualty agreed to pay "Covered Causes of Loss," meaning direct physical loss to Covered Property unless the loss is excluded or limited by the policy.

19.    Losses due to COVID-19 are a Covered Cause of Loss under Hartford Casualty policies with the Special Property Coverage Form.

20.    In the Special Property Coverage Form, Hartford Casualty agreed to pay for its insureds' actual loss of Business Income sustained due to the necessary suspension of its operations during the "period of restoration" caused by direct physical loss or damage. A "partial slowdown or complete cessation" of business activities at the Covered Property is a "suspension" under the policy, for which Hartford Casualty agreed to pay for loss of Business Income during the "period of restoration" that begins with the date of physical loss or damage.

21.    "Business Income" means net income (net profit or loss before income taxes) that Plaintiffs and the other Class members would have earned or incurred, as well as continuing normal operating expenses incurred, including payroll.

22.    The presence of virus or disease can constitute physical damage to property, as the insurance industry has recognized since at least 2006. When preparing so-called "virus" exclusions to be placed in some policies, but not others, the insurance industry drafting arm, ISO, circulated a statement to state insurance regulators that included the following:

> Disease-causing agents may render a product impure (change its quality or substance), or enable the spread of disease by their presence on interior building surfaces or the surfaces of personal property. When disease-causing viral or bacterial contamination occurs, potential claims involve the cost of replacement of property (for example, the milk), cost of decontamination (for example, interior building surfaces), and business interruption (time element) losses. Although building and personal property could arguably become contaminated (often temporarily) by such viruses and bacteria, the nature of the property itself would have a bearing on whether there is actual property damage. An allegation of property damage may be a point of disagreement in a particular case.

23.    In the Special Property Coverage Form, Hartford Casualty also agreed to pay necessary Extra Expense that its insureds incur during the "period of restoration" that the insureds would not have incurred if there had been no direct loss or damage to the Covered Property.

24.    "Extra Expense" includes expenses to avoid or minimize the suspension of business, continue operations, and to repair or replace property.

25.    Hartford Casualty also agreed to "pay for the actual loss of Business Income" that its insureds sustain when access to the Covered Property is specifically prohibited by order of a civil authority as the direct result of the risk of physical loss to property in the immediate area of the Covered Property.

26.    Plaintiff's Hartford Casualty insurance policy also incorporates Hartford Casualty's "Limited Fungi, Bacteria or Virus Coverage" endorsement, which applies to the Specialty Property Coverage Form."

27.    The Virus Coverage Endorsement provides limited coverage for losses caused by virus.

28.    The Virus Coverage Endorsement states, with respect to the Specialty Property Coverage Form's Time Element Coverages, that if a suspension of operations is "necessary due to loss or damage to property caused by . . . virus," then Hartford Casualty's payment under the Time Element Coverage is limited to the amount of loss and expense sustained during a period of thirty days or the number of days indicated in the policy's declarations.  The declarations pages in Plaintiff's policy provides for Business Income and Extra Expense coverage for thirty days.

29.    Losses caused by COVID-19 and the related orders issued by local, state, and federal authorities triggered the Business Income, Extra Expense, and Civil Authority provisions of the Hartford Casualty policy.

**B.**    ***The Covered Cause of Loss***

30.    The presence of COVID-19 has caused civil authorities throughout the country to issue orders requiring the suspension of business at a wide range of establishments, including civil authorities with jurisdiction over Plaintiff's businesses (the "Closure Orders").

31.    On March 17, 2020, the State of Ohio issued a civil authority requiring the cancellation of non-essential or elective surgeries.  This order has been in effect since March 18, 2020.

32.    On March 18, 2020, the Ohio State Dental Board issued an advisory stating that dental practitioners should defer non-essential or elective procedures with immediate effect.

33.    On March 22, 2020, the State of Ohio issued a civil authority order requiring the closure of non-essential businesses.  This order has been in effect since March 22, 2020.

34.    The Ohio Closure Orders were issued in response to the spread of COVID-19 throughout Ohio.

35.    The presence of COVID-19 caused direct physical loss of or damage to the covered property under the Plaintiff's policy, and the policies of the other Class members, by denying use of and damaging the covered property, and by causing a necessary suspension of operations during a period of restoration.

36.    The Closure Orders, including the issuance of the Ohio Closure Order, prohibited access to Plaintiff's and the other Class members' Covered Property, and the area immediately surrounding Covered Property, in response to dangerous physical conditions resulting from a Covered Cause of Loss.

37.     As a result of the presence of COVID-19 and the Closure Orders, Plaintiff and the

other Class members lost Business Income and incurred Extra Expense.

## V.    CLASS ACTION ALLEGATIONS

38.     Plaintiff brings this action pursuant to Rules 23(a), 23(b)(1), 23(b)(2), 23(b)(3), and

23(c)(4) of the Federal Rules of Civil Procedure, individually and on behalf of all others similarly

situated.

39.     Plaintiff seeks to represent nationwide classes defined as:

- All persons and entities that: (a) had Business Income coverage under a property insurance policy issued by Hartford Casualty; (b) suffered a suspension of business related to COVID-19, at the premises covered by their Hartford Casualty property insurance policy; (c) made a claim under their property insurance policy issued by Hartford Casualty; and (d) were denied Business Income coverage by Hartford Casualty for the suspension of business resulting from the presence or threat of COVID-19 (the "Business Income Breach Class").

- All persons and entities that: (a) had Civil Authority coverage under a property insurance policy issued by Hartford Casualty; (b) suffered  loss of Business Income and/or Extra Expense caused by action of a civil authority; (c) made a claim under their property insurance policy issued by Hartford Casualty; and (d) were denied Civil Authority coverage by Hartford Casualty for the loss of Business Income and/or Extra Expense caused by a Closure Order (the "Civil Authority Breach Class").

- All persons and entities that: (a) had Extra Expense coverage under a property insurance policy issued by Hartford Casualty; (b) sought to minimize the suspension of business in connection with COVID-19 at the premises covered by their Hartford Casualty property insurance policy; (c) made a claim under their property insurance policy issued b Hartford Casualty; and (d) were denied Extra Expense coverage by Hartford Casualty despite their efforts to minimize the suspension of business caused by COVID-19 (the "Extra Expense Breach Class").

- All persons and entities with Business Income coverage under a property insurance policy issued by Hartford Casualty that suffered a suspension of business due to COVID-19 at the premises covered by the business income coverage (the "Business Income Declaratory Judgment Class").

- All persons and entities with Civil Authority coverage under a property insurance policy issued by Hartford Casualty that suffered loss of Business Income and/or Extra Expense caused by a Closure Order (the "Civil Authority Declaratory Judgment Class").

- All persons and entities with Extra Expense coverage under a property insurance policy issued by Hartford Casualty that sought to minimize the suspension of business in connection with COVID-19 at the premises covered by their Hartford Casualty property insurance policy (the "Extra Expense Declaratory Judgment Class").

40.    Excluded from each defined Class is Defendant and any of its members, affiliates, parents, subsidiaries, officers, directors, employees, successors, or assigns; governmental entities; and the Court staff assigned to this case and their immediate family members.  Plaintiff reserves the right to modify or amend each of the Class definitions, as appropriate, during the course of this litigation.

41.    This action has been brought and may properly be maintained on behalf of each Class proposed herein under the criteria of Rule 23 of the Federal Rules of Civil Procedure.

42.    **Numerosity—Federal Rule of Civil Procedure 23(a)(1).**  The members of each defined Class are so numerous that individual joinder of all Class members is impracticable.  While Plaintiff is informed and believes that there are thousands of members of each Class, the precise number of Class members is unknown to Plaintiff but may be ascertained from Defendant's books and records.  Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, electronic mail, internet postings, and/or published notice.

43.     **Commonality and Predominance—Federal Rule of Civil Procedure 23(a)(2)
and 23(b)(3).**  This action involves common questions of law and fact, which predominate over
any questions affecting only individual Class members, including, without limitation:

    a.  whether Hartford Casualty issued all-risk policies to the members of the Class in
exchange for payment of premiums by the Class members;

    b.  whether the Class suffered a covered loss based on the common policies issued to
members of the Class;

    c.  whether Hartford Casualty's Business Income coverage applies to a suspension of
business caused by COVID-19;

    d.  whether Hartford Casualty's Civil Authority coverage applies to a loss of
Business Income caused by the orders of state governors requiring the suspension
of business as a result of COVID-19;

    e.  whether Hartford Casualty's Extra Expense coverage applies to efforts to
minimize a loss caused by COVID-19; and

    f.  whether Hartford Casualty's Virus Coverage Endorsement states an intention to
provide coverage under the Business Income, Civil Authority, and Extra Expense
coverages when a suspension of operations is necessary due to loss or damage to
property caused by virus.

44.     **Typicality—Federal Rule of Civil Procedure 23(a)(3).**  Plaintiff's claims are
typical of the other Class members' claims because Plaintiff and the other Class members are all
similarly affected by Defendant's refusal to pay under its Business Income, Civil Authority, and
Extra Expense coverages.  Plaintiff's claims are based upon the same legal theories as those of the

other Class members.  Plaintiff and the other Class members sustained damages as a direct and proximate result of the same wrongful practices in which Defendant engaged.

45.    **Adequacy of Representation—Federal Rule of Civil Procedure 23(a)(4).** Plaintiff is an adequate Class representatives because its interests do not conflict with the interests of the other Class members who they seeks to represent, Plaintiff has retained counsel competent and experienced in complex class action litigation, including successfully litigating class action cases similar to this one, where insurers breached contracts with insureds by failing to pay the amounts owed under their policies, and Plaintiff intends to prosecute this action vigorously.  The interests of the above-defined Classes will be fairly and adequately protected by Plaintiff and its counsel.

46.    **Inconsistent or Varying Adjudications and the Risk of Impediments to Other Class Members' Interests—Federal Rule of Civil Procedure 23(b)(1).**  Plaintiff seeks class-wide adjudication as to the interpretation, and resultant scope, of Defendant's Business Income, Civil Authority, and Extra Expense coverages.  The prosecution of separate actions by individual members of the Classes would create an immediate risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for the Defendant.  Moreover, the adjudications sought by Plaintiff could, as a practical matter, substantially impair or impede the ability of other Class members, who are not parties to this action, to protect their interests.

47.    **Declaratory and Injunctive Relief—Federal Rule of Civil Procedure 23(b)(2).** Defendant acted or refused to act on grounds generally applicable to Plaintiff and the other Class members, thereby making appropriate final injunctive relief and declaratory relief, as described below, with respect to the Class members.

48.    **Superiority—Federal Rule of Civil Procedure 23(b)(3).**   A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. Individualized litigation creates a potential for inconsistent or contradictory judgments and increases the delay and expense to all parties and the court system.   By contrast, the class action device presents far fewer management difficulties, and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court.

## VI.    CLAIMS FOR RELIEF

### COUNT I
### BREACH OF CONTRACT -- BUSINESS INCOME COVERAGE
**(Claim Brought on Behalf of the Business Income Breach Class)**

49.    Plaintiff Olentangy Pediatric ("Plaintiff" for the purpose of this claim) repeats and realleges Paragraphs 1-48 as if fully set forth herein.

50.    Plaintiff brings this Count individually and on behalf of the other members of the Business Income Breach Class.

51.    Plaintiff's Hartford Casualty policy, as well as those of the other Business Income Breach Class members, are contracts under which Hartford Casualty was paid premiums in exchange for its promise to pay Plaintiff's and the other Business Income Breach Class members' losses for claims covered by the policy.

52.    In the Special Property Coverage Form, Hartford Casualty agreed to pay for its insureds' actual loss of Business Income sustained due to the necessary suspension of its operations during the "period of restoration."

12

53.     A "partial slowdown or complete cessation" of business activities at the Covered Property is a "suspension" under the policy, for which Hartford Casualty agreed to pay for loss of Business Income during the "period of restoration" that begins with the date of physical loss or damage.

54.     "Business Income" means net income (net profit or loss before incomes taxes) that Plaintiff and the other Class members would have earned or incurred, as well as continuing normal operating expenses incurred.

55.     COVID-19 caused direct loss to Plaintiff's and the other Business Income Breach Class members' Covered Properties, requiring suspension of operations at the Covered Properties. Losses caused by COVID-19 thus triggered the Business Income provision of Plaintiff's and the other Business Income Breach Class members' Hartford Casualty policies.

56.     Plaintiff and the other Business Income Breach Class members have complied with all applicable provisions of their policies and/or those provisions have been waived by Hartford Casualty or Hartford Casualty is estopped from asserting them, and yet Hartford Casualty has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms.

57.     By denying coverage for any Business Income losses incurred by Plaintiff and the other Business Income Breach Class members in connection with the COVID-19 pandemic, Hartford Casualty has breached its coverage obligations under the policies.

58.     As a result of Hartford Casualty's breaches of the policies, Plaintiff and the other Business Income Breach Class members have sustained substantial damages for which Hartford Casualty is liable, in an amount to be established at trial.

**COUNT II**
**BREACH OF CONTRACT – CIVIL AUTHORITY COVERAGE**
**(Claim Brought on Behalf of the Civil Authority Breach Class)**

59.     Plaintiff Olentangy Pediatric ("Plaintiff" for the purpose of this claim) repeats and realleges Paragraphs 1-48 as if fully set forth herein.

60.     Plaintiff brings this Count individually and on behalf of the other members of the Civil Authority Breach Class.

61.     Plaintiff's Hartford Casualty insurance policy, as well as those of the other Civil Authority Breach Class members, are contracts under which Hartford Casualty was paid premiums in exchange for its promise to pay Plaintiff's and the other Civil Authority Breach Class members' losses for claims covered by the policy.

62.     Hartford Casualty also agreed to "pay for the actual loss of Business Income" that its insureds sustain when access to the Covered Property is specifically prohibited  by order of a civil authority as the direct result of the risk of physical loss to property in the immediate area of the Covered Property.

63.     The Closure Orders triggered the Civil Authority provision under Plaintiff's and the other members of the Civil Authority Breach Class's Hartford Casualty insurance policies.

64.     Plaintiff and the other members of the Civil Authority Breach Class have complied with all applicable provisions of the policies and/or those provisions have been waived by Hartford Casualty or Hartford Casualty is estopped from asserting them, and yet Hartford Casualty has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms.

65.     By denying coverage for any business losses incurred by Plaintiff and other members of the Civil Authority Breach Class in connection with the Closure Orders and the COVID-19 pandemic, Hartford Casualty has breached its coverage obligations under the policies.

66.     As a result of Hartford Casualty's breaches of the policies, Plaintiff and the other members of the Civil Authority Breach Class have sustained substantial damages for which Hartford Casualty is liable, in an amount to be established at trial.

## COUNT III
## BREACH OF CONTRACT – EXTRA EXPENSE COVERAGE
**(Claim Brought on Behalf of the Extra Expense Breach Class)**

67.     Plaintiff Olentangy Pediatric ("Plaintiff" for the purpose of this claim) repeats and realleges Paragraphs 1-48 as if fully set forth herein.

68.     Plaintiff brings this Count individually and on behalf of the other members of the Extra Expense Breach Class.

69.     Plaintiff's Hartford Casualty insurance policy, as well as those of the other Extra Expense Breach Class members, are contracts under which Hartford Casualty was paid premiums in exchange for its promise to pay Plaintiff's and the other Extra Expense Breach Class members' losses for claims covered by the policy.

70.     In the Special Property Coverage Form's "Extra Expense" coverage promises to pay the expense incurred to minimize the suspension of business and to continue operations.

71.     "Extra Expense" includes expenses to avoid or minimize the suspension of business, continue operations, and to repair or replace property.

72.     Due to COVID-19 and the Closure Orders, Plaintiff and the other members of the Extra Expense Breach Class incurred Extra Expense at Covered Property.

73.    Plaintiff and the other members of the Extra Expense Breach Class have complied with all applicable provisions of the policies and/or those provisions have been waived by Hartford Casualty or Hartford Casualty is estopped from asserting them, and yet Hartford Casualty has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms.

74.    By denying coverage for any business losses incurred by Plaintiff and the other members of the Extra Expense Breach Class in connection with the Closure Orders and the COVID-19 pandemic, Hartford Casualty has breached its coverage obligations under the policies. As a result of Hartford Casualty's breaches of the policies, Plaintiff and the other members of the Extra Expense Breach Class have sustained substantial damages for which Hartford Casualty is liable, in an amount to be established at trial.

### COUNT IV
### DECLARATORY JUDGMENT – BUSINESS INCOME COVERAGE
#### (Claim Brought on Behalf of the Business Income
#### Declaratory Judgment Class)

75.    Plaintiff Olentangy Pediatric ("Plaintiff" for the purpose of this claim) repeats and realleges Paragraphs 1-48 as if fully set forth herein.

76.    Plaintiff brings this Count individually and on behalf of the other members of the Business Income Declaratory Judgment Class.

77.    Plaintiff's Hartford Casualty policy, as well as those of the other Business Income Declaratory Judgment Class members, are contracts under which Hartford Casualty was paid premiums in exchange for its promise to pay Plaintiff's and the other Business Income Declaratory Judgment Class members' losses for claims covered by the policy.

78.    Plaintiff and the other Business Income Declaratory Judgment Class members have complied with all applicable provisions of the policies and/or those provisions have been waived by Hartford Casualty or Hartford Casualty is estopped from asserting them, and yet Hartford Casualty has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff and the other Business Income Declaratory Judgment Class members are entitled.

79.    Hartford Casualty has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

80.    An actual case or controversy exists regarding Plaintiff's and the other Business Income Declaratory Judgment Class members' rights and Hartford Casualty's obligations under the policies to reimburse Plaintiff for the full amount of Business Income losses incurred by Plaintiff and the other Business Income Declaratory Judgment Class members in connection with the suspension of their businesses stemming from the COVID-19 pandemic.

81.    Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Business Income Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

   i.    Plaintiff's and the other Business Income Declaratory Judgment Class members' Business Income losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their policies; and

   ii.   Hartford Casualty is obligated to pay Plaintiff and the other Business Income Declaratory Judgment Class members for the full amount of the Business Income

losses incurred and to be incurred in connection with the Closure Orders during the period of restoration and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

**COUNT V**
**DECLARATORY JUDGMENT – CIVIL AUTHORITY COVERAGE**
**(Claim Brought on Behalf of the Civil Authority Declaratory Judgment Class)**

82.     Plaintiff Olentangy Pediatric ("Plaintiff" for the purpose of this claim) repeats and realleges Paragraphs 1-48 as if fully set forth herein.

83.     Plaintiff brings this Count individually and on behalf of the other members of the Civil Authority Declaratory Judgment Class.

84.     Plaintiff's Hartford Casualty insurance policy, as well as those of the other Civil Authority Declaratory Judgment Class members, are contracts under which Hartford Casualty was paid premiums in exchange for its promise to pay Plaintiff's and the other Civil Authority Declaratory Judgment Class members' losses for claims covered by the policy.

85.     Plaintiff and the other Civil Authority Declaratory Judgment Class members have complied with all applicable provisions of the policies and/or those provisions have been waived by Hartford Casualty or Hartford Casualty is estopped from asserting them, and yet Hartford Casualty has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff and the other Class members are entitled.

86.     Hartford Casualty has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

87.     An actual case or controversy exists regarding Plaintiff's and the other Civil Authority Declaratory Judgment Class members' rights and Hartford Casualty's obligations under the policies to reimburse Plaintiff and the other Civil Authority Declaratory Judgment Class members for the full amount of covered Civil Authority losses incurred by Plaintiff and the other Civil Authority Declaratory Judgment Class members in connection with Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

88.     Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Civil Authority Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

i.      Plaintiff's and the other Civil Authority Declaratory Judgment Class members' Civil Authority losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their policies; and

ii.     Hartford Casualty is obligated to pay Plaintiff and the other Civil Authority Declaratory Judgment Class members the full amount of the Civil Authority losses incurred and to be incurred in connection with the covered losses related to the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

**COUNT VI**
**DECLARATORY JUDGMENT – EXTRA EXPENSE COVERAGE**
**(Claim Brought on Behalf of the Extra Expense Declaratory Judgment Class)**

89.     Plaintiff Olentangy Pediatric ("Plaintiff" for the purpose of this claim) repeats and realleges Paragraphs 1-48 as if fully set forth herein.

90.    Plaintiff brings this Count individually and on behalf of the other members of the Extra Expense Declaratory Judgment Class.

91.    Plaintiff's Hartford Casualty insurance policy, as well as those of the other Extra Expense Declaratory Judgment Class members, are contracts under which Hartford Casualty was paid premiums in exchange for its promise to pay Plaintiff's and the other Extra Expense Declaratory Judgment Class members' losses for claims covered by the policy.

92.    Plaintiff and the other Extra Expense Declaratory Judgment Class members have complied with all applicable provisions of the policies and/or those provisions have been waived by Hartford Casualty or Hartford Casualty is estopped from asserting them, and yet Hartford Casualty has abrogated its insurance coverage obligations pursuant to the policies' clear and unambiguous terms and has wrongfully and illegally refused to provide coverage to which Plaintiff and the other Class members are entitled.

93.    Hartford Casualty has denied claims related to COVID-19 on a uniform and class wide basis, without individual bases or investigations, such that the Court can render declaratory judgment irrespective of whether members of the Class have filed a claim.

94.    An actual case or controversy exists regarding Plaintiff's and the other Extra Expense Declaratory Judgment Class members' rights and Hartford Casualty's obligations under the policies to reimburse Plaintiff and the other Extra Expense Declaratory Judgment Class members for the full amount of Extra Expense losses incurred in connection with Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

95.    Pursuant to 28 U.S.C. § 2201, Plaintiff and the other Extra Expense Declaratory Judgment Class members seek a declaratory judgment from this Court declaring the following:

i.    Plaintiff's and the other Extra Expense Declaratory Judgment Class members' Extra Expense losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their policies; and

ii.   Hartford Casualty is obligated to pay Plaintiff and the other Extra Expense Declaratory Judgment Class members for the full amount of the Extra Expense losses incurred and to be incurred in connection with the covered losses related to the Closure Orders during the period of restoration and the necessary interruption of their businesses stemming from the COVID-19 pandemic.

## VII.    <u>REQUEST FOR RELIEF</u>

WHEREFORE, Plaintiff, individually and on behalf of the other Class members, respectfully requests that the Court enter judgment in its favor and against Defendant as follows:

a.    Entering an order certifying the proposed nationwide Classes, as requested herein, designating Plaintiff as Class representative, and appointing Plaintiff's undersigned attorneys as Counsel for the Classes;

b.    Entering judgment on Counts I-III in favor of Plaintiff Olentangy Pediatric and the members of the Business Income Breach Class, the Civil Authority Breach Class, and the Extra Expense Breach Class; and awarding damages for breach of contract in an amount to be determined at trial;

c.    Entering declaratory judgments on Counts IV-VI in favor of Plaintiff and the members of the Business Income Declaratory Judgment Class, the Civil Authority Declaratory Judgment Class, and the Extra Expense Declaratory Judgment Class as follows:

     i.     Business Income, Civil Authority, and Extra Expense losses incurred in connection with the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic are insured losses under their policies; and

     ii.    Hartford Casualty is obligated to pay for the full amount of the Business Income, Civil Authority, and Extra Expense losses incurred and to be incurred related to COVID-19, the Closure Orders and the necessary interruption of their businesses stemming from the COVID-19 pandemic;

d.    Ordering Defendant to pay both pre- and post-judgment interest on any amounts awarded;

e.    Ordering Defendant to pay attorneys' fees and costs of suit; and

f.    Ordering such other and further relief as may be just and proper.

## VIII.  <u>JURY DEMAND</u>

Plaintiff hereby demands a trial by jury on all claims so triable.

Dated: May 6, 2020

Respectfully submitted,

*/s/ Kathleen L. Nastri*
Kathleen L. Nastri (032250)
**KOSKOFF KOSKOFF & BIEDER PC**
350 Fairfield Avenue, Suite 501
Bridgeport, Connecticut  06604
Telephone:  203-336-4421
Email: knastri@koskoff.com

Adam J. Levitt*
Amy E. Keller*
Daniel R. Ferri*
Mark Hamill*
Laura E. Reasons*
**DICELLO LEVITT GUTZLER LLC**

22

Ten North Dearborn Street, Sixth Floor
Chicago, Illinois  60602
Telephone:  312-214-7900
alevitt@dicellolevitt.com
akeller@dicellolevitt.com
dferri@dicellolevitt.com
mhamill@dicellolevitt.com
lreasons@dicellolevitt.com

Kenneth P. Abbarno*
Mark A. DiCello*
Mark Abramowitz*
**DICELLO LEVITT GUTZLER LLC**
7556 Mentor Avenue
Mentor, Ohio  44060
Telephone:  440-953-88
kabbarno@dicellolevitt.com
madicello@dicellolevitt.com
mabramowitz@dicellolevitt.com

Mark Lanier*
Alex Brown*
Skip McBride*
**THE LANIER LAW FIRM PC**
10940 West Sam Houston Parkway North
Suite 100
Houston, Texas  77064
Telephone:  713-659-5200
WML@lanierlawfirm.com
alex.brown@lanierlawfirm.com
skip.mcbride@lanierlawfirm.com

Timothy W. Burns*
Jeff J. Bowen*
Jesse J. Bair*
Freya K. Bowen*
**BURNS BOWEN BAIR LLP**
One South Pinckney Street, Suite 930
Madison, Wisconsin 53703
Telephone: 608-286-2302
tburns@bbblawllp.com
jbowen@bbblawllp.com
jbair@bbblawllp.com
fbowen@bbblawllp.com

23

Douglas Daniels\*
**DANIELS & TREDENNICK**
6363 Woodway, Suite 700
Houston, Texas  77057
Telephone:  713-917-0024
douglas.daniels@dtlawyers.com

***Counsel for Plaintiff***
***and the Proposed Classes***

\*Applications for admission *pro hac vice* to be filed